## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION


Sean Scipio,

      Plaintiff,

-V-
                                      Case No. 2:05-cv-00759
                                      Judge Michael H. Watson

City of Steubenville, et al.,

      Defendants.


### OPINION AND ORDER

Plaintiff brings claims under 42 U.S.C. § 1983, alleging that defendant police officers violated his Fourth Amendment rights when they arrested him without probable cause and used excessive force to effectuate the arrest. This matter is before the Court on defendants' motion for summary judgment. For the reasons that follow, the Court grants defendants' summary judgment motion in part and denies it in part.

### I. Facts

Plaintiff is an individual citizen of the State of Ohio. Defendant City of Steubenville is a political subdivision of the State of Ohio. Defendant Dominic Mucci is the Mayor of Steubenville. William McCafferty is the Chief of the Steubenville Police Department. Plaintiff sues Mayor Mucci and Chief McCafferty in their official capacities only. John Green, Charles Daniels, Geoff Palmer, L. Bickerstaff and P. Basil are all

Police Officers in the Steubenville Police Department. Plaintiff sues the officers in their official and individual capacities.

This case arises from an incident that took place in Steubenville, Ohio on September 17, 2003. At about 9:00 a.m., plaintiff was called to Steubenville High School to pick up his son who had been expelled for smoking. Officers Green and Palmer assert that while they were driving past the school, they observed plaintiff strike his son, who then fell down the steps. Plaintiff denies that he struck his son. Immediately after the incident, plaintiff's son allegedly initially told the high school principal that his father hit him. In a later deposition, however, plaintiff's son denied that his father struck him.

The officers stopped and got out of their cruiser. Both officers approached plaintiff and told him to put his hands behind his back. Plaintiff ultimately allowed himself to be handcuffed. The officers used two pairs of handcuffs interlocked because of plaintiff's large size.

Shortly after plaintiff was handcuffed, Officers Basil and Bickerstaff arrived at the scene. Officer Bickerstaff parked their cruiser. He then moved Officers Green and Palmer's cruiser, which had been left in the middle of the street. By the time Officer Bickerstaff got back to his cruiser, Officer Palmer had escorted plaintiff to within several feet of the curb near the cruiser.

Plaintiff was cooperative until he reached the cruiser. Officers Palmer and Green ordered plaintiff several times to get into the cruiser. Plaintiff repeatedly refused to get into the cruiser, claiming he would not fit. Eventually, the Officers told plaintiff that if he did not get into the cruiser, he would be sprayed with mace. Plaintiff told the

officers he was allergic to mace, and continued to refuse to get into the cruiser. Officer Palmer then directed Officer Basil to spray plaintiff. Officer Basil sprayed a two to three second burst of mace towards plaintiff's forehead. Plaintiff avers he was sprayed with mace as he was attempting to get into the cruiser. Plaintiff also asserts that one of the officers also struck him with a blunt object in the area of his right knee as he was trying to seat himself. Plaintiff ultimately got into the cruiser.

Plaintiff was charged with domestic violence. The charge was later dropped.

Plaintiff alleges that the knee injury he received at the time of his arrest required him to undergo surgery in 2006.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

## III. Discussion

### A. ADA claim

Plaintiff filed this action on August 11, 2005. On May 25, 2006, defendants filed a motion for judgment on the pleadings (Doc. 17), arguing that plaintiff's claims under the Americans with Disabilities Act ("ADA") were subject to dismissal. Plaintiff filed a response in opposition to the motion for judgment on the pleadings on May 27, 2006. The Court granted defendants' motion for judgment on the pleadings and dismissed plaintiff's ADA claim on February 15, 2007.

Defendants filed a motion for summary judgment as to plaintiff's Fourth Amendment claims on October 23, 2006. Plaintiff failed to timely respond, but on February 9, 2007, the Court granted plaintiff leave to file a memorandum in opposition to defendants' summary judgment motion (Doc. 53). The order did not grant plaintiff leave to file additional arguments in response to defendants' motion for judgment on the pleadings.

Plaintiff filed his response to defendants' summary judgment motion on February 16, 2007. Although the Court did not grant leave for plaintiff to do so, plaintiff devotes several pages of his response to his ADA claim. Nothing stopped plaintiff from raising the same arguments in a timely fashion much earlier in this litigation. Plaintiff's attempt

to oppose defendants' motion for judgment on the pleadings comes too late in the game to be considered, especially in light of the fact that the Court did not grant plaintiff leave to file such a response. Accordingly, the Court declines to consider the new arguments plaintiff raises in connection with his now dismissed ADA claim.

## B. Arrest without probable cause

Defendants do not move for summary judgment with respect to plaintiff's claims that he was arrested without probable cause. In any event, it is undisputed that plaintiff was arrested for hitting his son. There is a factual dispute as to whether plaintiff hit his son. This factual dispute gives rise to a genuine issue of material fact as to the merits of plaintiff's claim as well as qualified immunity. Summary judgment would therefore not be appropriate with respect to plaintiff's claim that he was arrested without probable cause. *See Jernigan v. City of Royal Oak,* No. 05-2245, 2006 WL 3147254, at * 3-5 (6th Cir. Nov. 2, 2006); *St. John v. Hickey,* 411 F.3d 762, 770 (6th Cir. 2005).

## C. Excessive force

The individual police officers assert that they are entitled to qualified immunity with respect to plaintiff's excessive force claim.

In the context of an excessive force claim, qualified immunity requires a two-pronged analysis. *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Griffith v. Coburn,* 473 F.3d 650, 656 (6th Cir. 2007). The Court must first determine whether "[t]aken in the light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier,* 533 U.S. at 201. If the first prong is met, the Court must then consider whether that right was clearly established on a specific level. *Id.* at 200.

In determining whether a use of force is excessive in violation of the Fourth Amendment, the Court applies the standard of "objective reasonableness." *See Graham v. Connor,* 490 U.S. 386, 388 (1989). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The reasonableness of the use of force is judged frm the perspective of a reasonable officer at the scene, and not with the 20/20 vision of hindsight. *Id.* at 396. Determining reasonableness requires the Court to carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the competing interests of the government. *Id.* Proper application of the test requires careful attention to the facts and circumstances of the case, including the severity of the crime, whether the suspect poses an immediate threat to the officers or others, and whether he is resisting arrest or attempting to flee. *Id.* "Because determining reasonableness in this context is such a fact-intensive endeavor, summary judgment is improper if the legal question of immunity turns on which version of the facts is accepted." *Griffith,* 473 F.3d at 656.

In the instant case, the question of reasonableness turns on which version of the facts is accepted. Furthermore, defendants' summary judgment motion does not address plaintiff's assertion that an officer struck him on or near his knee with a blunt object in addition to spraying him with mace. Viewing plaintiff's version of the facts in the light most favorable to him, the Court finds that plaintiff has shown a violation of his Fourth Amendment right not to be subjected to excessive force. Plaintiff has therefore satisfied the first prong of the *Saucier* analysis.

The Court must next examine whether plaintiff has met the second prong of *Saucier.* To meet the second prong, plaintiff must demonstrate that the right was clearly established in a particularized sense. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). That is, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* On the other hand, novel circumstances do not necessarily lead to a finding of qualified immunity. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). The Court may consider more than the factual contexts of earlier decisions; the general reasoning of the courts may also put an officer on notice that his conduct is clearly unconstitutional. *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003).

"[T]he right of a nonviolent arrestee to be free from unnecessary pain knowingly inflicted during an arrest is clearly established as of November 9, 2000." *St. John v. Hickey,* 411 F.3d 762, 774 (6th Cir. 2005). In a similar vein, the Sixth Circuit had clearly established the right of individuals who pose no safety risk to the police to be free from gratuitous violence during arrest before August 21, 2003. *Shreve v. Jessamine County Fiscal Court,* 453 F.3d 681, 688 (6th Cir. 2006). Police officers would have been aware that a Fourth Amendment seizure must be effectuated with "the least intrusive means reasonably available." *United States v. Sanders,* 719 F.2d 882, 887 (6th Cir. 1983). Applying these principles, and viewing plaintiff's version of the facts in the light most favorable to plaintiff, the Court finds that the law pertaining to excessive force was clearly established so that a reasonable officer in defendants' position would have known that the force used to arrest plaintiff violated his rights under the Fourth Amendment.

### D. Officer Daniels

Defendants assert that Officer Charles Daniels was not present at the scene of

the incident in question, and in fact was not working for the Steubenville Police

Department at the time. Plaintiff does not cogently respond to this assertion. The

Court therefore grants summary judgment in favor of Officer Daniels, dismissing him

from this case.

### E. Municipal liability

Defendants argue that they are entitled to summary judgment in their favor with

respect to plaintiff's claims against the City of Steubenville.

> To establish municipal liability pursuant to § 1983, a plaintiff must allege
> an unconstitutional action that "implements or executes a policy
> statement, ordinance, regulation, or decision officially adopted and
> promulgated by that body's officers" or a "constitutional deprivation [ ]
> visited pursuant to governmental 'custom' even though such a custom has
> not received formal approval through the body's official decisionmaking
> channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978). Only then can "the action of the municipality
> itself ... be said to have caused the harm." *Berry v. City of Detroit*, 25 F.3d
> 1342, 1345 (6th Cir.1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902,
> 130 L.Ed.2d 786 (1995); *City of Canton v. Harris*, 489 U.S. 378, 385, 109
> S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[A] municipality can be found liable
> under § 1983 only where the municipality *itself* causes the constitutional
> violation at issue. *Respondeat superior* or vicarious liability will not attach
> under § 1983.").

*Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)(emphasis in original).

Plaintiff contends that he can demonstrate a pattern of deliberate indifference to

detainees of the Steubenville Police department. First, plaintiff refers to two other

cases pending in this Court against the City of Steubenville. *Thorne v. Steubenville*

*Police Officer Lelless,* No. 2:05-cv-0001(Marbley, J.); *Kelley v. Steubenville Police*

*Dept.,* No. 2:05-cv-0760 (Watson, J.). *Thorne* concerns allegations of entry without a

warrant, arrest without probable cause, and excessive force. The incident that gave

rise to *Thorne* took place on June 6, 2004, after the arrest that is the subject of the

instant case. Notably, in *Thorne,* Judge Marbley granted summary judgment in favor of

the City of Steubenville, finding that plaintiff had failed to establish a policy of deliberate

indifference toward false arrests and the use of excessive force. *Kelley* involves

allegations of a warrantless search and excessive force. The incident that gave rise to

*Kelley* occurred on December 23, 2004, more than a year after the arrest that forms the

basis of the case at bar. The current procedural posture of *Kelley* is that defendants

filed a motion for summary judgment on September 7, 2006 and plaintiffs recently

sought and obtained extension of time to respond to the summary judgment motion.

The Court finds that these two later cases do not support a finding of a policy of

deliberate indifference on the part fo the City of Steubenville. *See Thorne v.*

*Steubenville Police Officer Lelless,* No. 2:05-cv-0001, at 32 (S.D. Ohio Nov. 29,

2006)(twelve complaints of excessive force filed in 2004 do not support a *Monell*

claim)(citing *Singleton v. City of Newburgh,* 1 F. Supp.2d 306, 311 (S.D.N.Y.

1998)(three excessive force complaints do not demonstrate deliberate indifference)).

Second, plaintiff seeks to rely on the conduct that formed the basis of Consent

Decree entered into by the United States Department of Justice and the City of

Steubenville on September 4, 1997. As defendants point out, however, the Auditor

found the City was in substantial compliance with the terms of the Consent Decree

beginning in January 2003 and continuing through the remainder of 2003 and 2004. As

such, the conduct that formed the basis of the Consent Decree in 1997 does not

support a policy of deliberate indifference in September 2003.

Lastly, plaintiff suggests that the City's citizen complaint process is inadequate because plaintiff's wife, Lori Scipio, was never contacted by Internal Affairs before it issued its determination that plaintiff's complaint was unfounded. The Court, however, finds that the mere failure to contact Mrs. Scipio falls far short of demonstrating that the investigation process is unconstitutionally flawed.

For the above reasons, the Court holds that plaintiff has failed to adduce evidence sufficient to give rise to a genuine issue of material fact as to whether the City of Steubenville had a policy of deliberate indifference toward arrests without probable cause and the use of excessive force. Accordingly, the City of Steubenville is entitled to summary judgment in its favor on plaintiff's Fourth Amendment claims.

## IV. Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motion in part and **DENIES** it in part. The Court **DISMISSES** plaintiff's official capacity claims and therefore his claims against the City of Steubenville. The Court also **DISMISSES** plaintiff's claims against Officer Charles Daniels. Plaintiff's Fourth Amendment claims against the other individual officers remain pending.

The Clerk shall remove Doc. 34 from the Court's pending CJRA motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**